UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 DEC 30 PM 1:49

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| DUFFY'S WASTE AND RECYCLING, INC., | ) ) ) |
| PLAINTIFF, | ) ) |
| v. | ) ) |
| NAVISTAR INTERNATIONAL CORP. and NAVISTAR, INC., | ) ) ) |
| DEFENDANTS. | ) ) |

CIVIL ACTION NO.: 5:15-cv-269

## COMPLAINT

NOW COMES the Plaintiff, by and through its attorneys Bookchin & Durrell, P.C., and hereby complains of the Defendants as follows:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

### Parties

2. Plaintiff Duffy's Waste and Recycling, Inc. (hereinafter "Duffy's") is a Vermont corporation with its principal place of business in Georgia, Vermont and thus is a citizen of Vermont. Duffy's is in the business of collecting, hauling and disposing of waste and recyclable materials.

3. Defendant Navistar International Corporation (hereinafter collectively "Navistar") is a parent company whose subsidiary Navistar, Inc. produces, among other things, heavy-duty commercial trucks.

4. Defendant Navistar, Inc. (hereinafter collectively "Navistar") is a wholly-owned subsidiary of Navistar International Corporation. Navistar, Inc. manufactures International brand

heavy-duty commercial trucks and MaxxForce brand diesel engines.

5. Navistar International Corporation and Navistar, Inc. are corporations organized under the laws of the State of Delaware. Both Navistar Defendants have the same principal place of business: 2701 Navistar Drive, Lisle, Illinois 60532. Thus, the Defendants are citizens of both Delaware and Illinois.

6. This action is a "tag along" action to MDL No. 2590 In re: Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation currently pending in the Northern District of Illinois.

**Factual Allegations**

7. This action arises from the design, manufacture, distribution and sale of International commercial trucks equipped with MaxxForce Engines.

8. J&B International Trucks, Inc. (hereinafter "J&B") owns and operates an International truck dealership in Colchester, Vermont pursuant to an agreement with Navistar.

9. On or about May 26, 2009, Duffy's purchased a new 2009 International 7400 SBA 6X4 with VIN number 1HTWGAZT09J195889 for $160,000.00 (hereinafter the "Truck").

10. Duffy's made a down payment of $5,000.00 and financed the balance of the purchase price over 72 months at an interest rate of 9.95% for a total cost of $211,467.20.

11. Beginning on January 4, 2010, the Truck was returned to J&B or another dealer for warranty or service contract engine service 19 different times.

12. It had to be towed for that service 17 times.

13. Navistar's Maxxforce engines (hereinafter "Engines") contain mechanisms designed and manufactured to reduce diesel engine exhaust emissions.

2

14. The exhaust emission controls in Navistar's Maxxforce Engines were designed and manufactured so as to comply with rules and regulations issued by the United States Environmental Protection Agency (hereinafter "EPA").

15. Navistar called the emission control system on MaxxForce Engines an exhaust gas recirculation system. Usually, Navistar described the system by its initial letters: EGR.

16. Navistar's EGR system was designed to reduce emissions by subjecting exhaust to a "second burn" in the MaxxForce Engines' cylinders.

17. Among other things, Navistar's EGR system diverts some diesel engine exhaust into a device which attempts to use engine coolant to reduce exhaust temperature and then recirculates that exhaust back to the engine.

18. Every major U.S. truck manufacturer except Navistar chose to meet the EPA's 2010 diesel engine emission standards with a "Selective Catalytic Reduction" (hereinafter "SCR") system which treats exhaust with a urea-based chemical after it leaves the engine and does not rely on a "second burn."

19. Navistar's Maxxforce Engines were sold with a number of express and implied warranties.

20. Navistar's express warranties included, but were not limited to, the Navistar Standard Warranty, the Navistar Federal Emission System Warranty, multiple express warranties arising from statements in Navistar's "Maintenance Information Guide" and multiple express warranties arising from Navistar's advertisements.

21. In its "Maintenance Information Guide," Navistar expressly warranted that the Maxxforce Engine with EGR had "lower operating costs," "less hassle," "optimal performance and

low cost of ownership," "better fuel efficiency," "more power to the wheels and less out the exhaust," "improve[d] combustion," "premium reliability" and that "Maxxforce Engines can be counted on to show up for work every day."

22. Navistar represented to prospective purchasers that the MaxxForce Engines were "some of the cleanest and most energy-efficient diesel engines ever produced" and gave "customers the ultimate combination in durability and power" and a "no-hassle, business-as-usual solution that will deliver lower total operating costs for customers."

23. Navistar represented to prospective purchasers that before it marketed engines with EGR, Navistar's test vehicles had "logged millions of driving miles in real world conditions."

24. Navistar represented to prospective purchasers that "MaxxForce Engines deliver: Reliability; Durability; Power; Performance; [and] Fuel Economy" and that the Engines are a "no-hassle" solution that "eliminate the hassle of ... additional maintenance...."

25. Navistar made public statements asserting that its MaxxForce Engines had lower cost of ownership and superior fuel economy than engines equipped with an SCR system.

26. Navistar made numerous public statements that EGR was a "proven technology" that would provide a "no-hassle emissions solution," that the Engines would be just as reliable and durable as Navistar's earlier engines, and that trucks equipped with EGR would have a "much higher residual value" than trucks equipped with SCR.

27. Navistar was an outspoken critic of SCR asserting that it "could be the biggest false-start in trucking history" and it was a "marooned technology" that would be abandoned.

28. When Navistar's EGR became a topic of controversy, Navistar repeatedly assured purchasers and prospective purchasers that the criticism of its systems was unwarranted and that whatever problems the EGR system had, had been fixed by Navistar.

29. Navistar abandoned EGR in its 2013 model year and now uses a SCR system.

30. Navistar abandoned its EGR system because that system caused excessive heat and pressure within MaxxForce Engines which made those Engines unreliable, impractical and too expensive to maintain and operate.

31. The MaxxForce Engine Duffy's purchased from Navistar through J&B failed to function as Navistar expressly and impliedly represented it would and failed to perform in the manner Duffy's reasonably expected.

32. Defects in the MaxxForce Engine Duffy's purchased from Navistar through J&B frequently caused check engine lights to illuminate, caused the Engine to derate (operate with reduced power) and caused the Engine to cease operation and to experience many other problems.

33. Defects in the MaxxForce Engine Duffy's purchased from Navistar through J&B resulted in the repeated destruction of engine parts and rendered the operation of the Truck unprofitable, impractical and damaging to Duffy's business reputation as customers often witnessed the Truck broken down by the side of the road or being towed for repairs. They also deprived Duffy's of sufficient means to service its customers on a timely basis.

## COUNT I--BREACH OF EXPRESS WARRANTY

34. Duffy's hereby incorporates by reference ¶¶ 1-33 of its complaint.

35. Navistar expressly warranted to Duffy's that the Truck Duffy's purchased from Navistar through J&B conformed to the Navistar Standard Warranty, the Navistar Federal Emission System Warranty, the representations contained in Navistar's "Maintenance Information Guide" and Navistar's advertisements.

36. Navistar breached, and continues to breach, these express warranties.

37. As a direct and proximate result of the breach of the express warranties, Duffy's has suffered, and continues to suffer, damages.

## COUNT II--BREACH OF IMPLIED WARRANTIES

38. Duffy's hereby incorporates by reference ¶¶ 1-37 of its complaint.

39. By operation of law, Navistar warranted to Duffy's that its MaxxForce Engines were fit for the ordinary purposes for which such engines are used and that those engines would pass without objection in the trade.

40. The MaxxForce Engine Duffy's purchased from Navistar was defective at the time it left Navistar's possession.

41. The MaxxForce Engine Duffy's purchased from Navistar through J&B was not fit for its ordinary, intended purpose.

42. The MaxxForce Engine Duffy's purchased from Navistar through J&B does not pass without objection in the trade.

43. As a direct and proximate result of Navistar's breach of the implied warranties, Duffy's has suffered, and continues to suffer, damages.

## COUNT III--NEGLIGENT MISREPRESENTATION

44. Duffy's hereby incorporates by reference ¶¶ 1-43 of its complaint.

45. Navistar, in the course of its business, supplied false information regarding the reliability, performance and operating costs of MaxxForce Engines to induce Duffy's to purchase the Truck.

46. Navistar's false information contained material omissions and misrepresentations of fact.

47. Navistar's false statements were made negligently and/or with reckless disregard of the truth.

48. Duffy's justifiably relied on Navistar's false statements to Duffy's detriment and as a direct and proximate result has suffered, and continues to suffer, pecuniary loss.

## COUNT IV--FRAUDULENT CONCEALMENT

49. Duffy's hereby incorporates by reference ¶¶ 1-48 of its complaint.

50. Navistar was in a superior position to know the true state of MaxxForce Engines, and knew their defective conditions were not easily discoverable by Duffy's.

51. Navistar had an affirmative duty to disclose the defects in MaxxForce Engines to Duffy's.

52. Navistar purposely failed to disclose to Duffy's material facts about its MaxxForce Engines.

53. Navistar intended that purchasers of MaxxForce Engines, including Duffy's, would rely on Navistar's representations.

54. Navistar's material omissions in its statements about MaxxForce Engines rendered those representations false.

55. Duffy's was not aware of the defects in MaxxForce Engine.

56. Duffy's could not reasonably have discovered the defective conditions.

57. Duffy's relied on Navistar's statements to its detriment.

58. Duffy's has suffered, and continues to suffer, damages because of Navistar's fraudulent concealment.

## COUNT VI--VIOLATION OF VERMONT'S CONSUMER PROTECTION ACT, 9 V.S.A. § 2451, *et seq.*

59. Duffy's hereby incorporates by reference ¶¶ 1-58 of its complaint.

60. Duffy's purchased the Truck from Navistar through J&B at J&B's principal place of business in Colchester, Vermont.

61. Navistar's sale to Duffy's was subject to Vermont's Consumer Protection Act, 9 V.S.A. § 2451, *et seq.* (the "Act") which makes unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce unlawful and provides a private cause of action for damages, injunctive relief, punitive damages and, in the case of a willful violation, reasonable costs and attorney's fees to any person injured because of a violation of the Act.

62. Navistar's MaxxForce Engines were not designed, manufactured or delivered in the manner and of the nature advertised or offered and were not designed, manufactured or delivered in accordance with other terms or conditions of Navistar's advertisements or offers.

63. Additionally, Navistar made representations and omissions that were likely to mislead; Duffy's interpretation of the representations and omissions were reasonable under the circumstances; and the representations and omissions were material in that they affected Duffy's purchasing decision.

64. Navistar wilfully violated the Act.

65. As a direct and proximate cause of Navistar's violations of the Act, Duffy's has suffered damages and is entitled to recover all relief allowed under the Act, including compensatory damages, treble damages, punitive damages and attorney's fees.

WHEREFORE, the Plaintiff respectfully requests that this Court award it the following relief:

a. Compensatory damages of at least $211,467.20 and in an amount to be determined by the trier of fact;

b. Exemplary and punitive damages pursuant to 9 V.S.A. § 2461(b) and the common law of the State of Vermont;

c. Attorney's fees pursuant to 9 V.S.A. § 2461(b) and the common law of the State of Vermont;

d. Restitution in an amount to be determined by the trier of fact;

e. Such other relief as may be equitable and just.

**THE PLAINTIFF HEREBY MAKES THIS ITS DEMAND FOR TRIAL BY JURY ON ALL ISSUES SO TRIABLE IN THIS COMPLAINT.**

Dated at Montpelier, Vermont this 30 day of December, 2015.

DUFFY'S WASTE AND RECYCLING, INC.

by: _____
David R. Bookchin, Esq.
Bookchin & Durrell, P.C.
2 Spring Street
Montpelier, VT 05660
(802) 229-9829
bookchin@lawofficevt.com
Attorneys for the Plaintiff

9